# United States Court of Appeals
## For the First Circuit

No. 13-1965

RYAN MARSHALL,

Petitioner, Appellee,

v.

BRISTOL SUPERIOR COURT,

Respondent, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. District Judge]

Before

Lynch, Chief Judge,
Howard and Kayatta, Circuit Judges.

Amy L. Karangekis, Assistant Attorney General, with whom
Martha Coakley, Attorney General of Massachusetts, and Kris C.
Foster, Assistant Attorney General, were on brief, for appellant.
Richard J. Fallon for appellee.

May 23, 2014

**LYNCH, Chief Judge**.  Petitioner Ryan Marshall was granted a writ of habeas corpus, pursuant to 18 U.S.C. § 2241, on double jeopardy grounds.  The writ bars Marshall's imminent prosecution for the murder of George Carpenter pending in the Bristol County Superior Court.

Marshall was indicted in 2001 and convicted in 2006 as an accessory before the fact to Carpenter's murder.  The Massachusetts Supreme Judicial Court ("SJC") reversed that conviction in August 2010.  It reasoned that although the evidence did establish Marshall's "active participation in, and presence during, the commission of the felony," the conviction could not stand where the conduct that was charged was required to have taken place before the felony was committed.  Commonwealth v. Rodriquez, 931 N.E.2d 20, 43 (Mass. 2010).

Following the SJC's decision in Rodriquez, the Commonwealth then indicted Marshall for murder.  Marshall moved to dismiss this latter indictment, arguing that the SJC's earlier reversal had been based on insufficiency of the evidence and, hence, that the Double Jeopardy Clause as incorporated against the states barred a second prosecution.  In affirming the denial of his motion to dismiss, the SJC disagreed with Marshall, holding that its earlier reversal had been based on a variance between the crime charged and the crime proved at trial under state law.  Marshall v. Commonwealth, 977 N.E.2d 40, 48 (Mass. 2012).  Under both state and

-2-

federal law, it held that a second prosecution following a reversal based on such a variance does not give rise to a double jeopardy problem.  Id.

Marshall filed a petition for habeas relief under 18 U.S.C. § 2241 seeking to block his pending prosecution.  On federal habeas review, the district court granted petitioner's request for relief.  Marshall v. Bristol Cnty. Superior Court, 951 F. Supp. 2d 232, 236 (D. Mass. 2013).  The district court accepted petitioner's double jeopardy argument.  Id. at 235-36.  In addition, the district court held that a newly asserted and hence unexhausted "ex post facto law" argument did not preclude it from granting relief. Id. at 234 & n.1.  The Commonwealth has appealed.  The issuance of the writ was stayed pending our review.

We reverse.  We hold that, under Tibbs v. Florida, 457 U.S. 31 (1982), this court is bound by the SJC's interpretation of its earlier reversal and the requirements of Massachusetts law. Bound as we are to accept the SJC's interpretations of its own state law and its own decision in Marshall of what it held in Rodriquez, petitioner's double jeopardy argument necessarily fails. We also reject petitioner's ex post facto claim as patently without merit.

I.

The facts and background of the case are set forth in the two SJC decisions.  In the early morning of February 16, 2001, the

-3-

victim, George Carpenter, age 45, was socializing with friends at the home of Donna Medeiros, Marshall's mother. Rodriguez, 931 N.E.2d at 26-27. Petitioner, his girlfriend, and his three friends -- Robert Tirado, Jonathan Torres, and Heather Lawrence -- arrived at the house soon after.[1] Id. at 27.

At some point, an argument began between Marshall, Tirado, and the victim. Id. The altercation between Tirado and the victim spilled out into the street when they left Medeiros's house. When Carpenter got into his car and tried to drive away, Tirado slashed the front driver's-side tire. Id. After driving

---

[1] Tirado, along with Lionel Rodriguez, Orlando Badillo, and Dennis Smith, was charged with murder in the first degree, while Torres was indicted as an accessory before the fact to murder in the first degree. Marshall, 977 N.E.2d at 42 & n.4. Tirado and Torres were tried first; Tirado was convicted of murder in the second degree, and Torres was acquitted. Rodriguez, 931 N.E.2d at 26 n.4. After being tried together, both Badillo and Smith were convicted of murder in the second degree. Id. Tirado's conviction was affirmed by the Appeals Court, see Commonwealth v. Tirado, 842 N.E.2d 980 (Mass. App. Ct. 2006), as was the order denying his motion for a new trial, Commonwealth v. Tirado, 898 N.E.2d 890 (Mass. App. Ct. 2009) (table). Badillo's and Smith's convictions were reversed on the ground that certain medical evidence and testimony had been improperly admitted. Commonwealth v. Badillo, 968 N.E.2d 942, at *2 (Mass. App. Ct. 2012) (table). "Other than the improperly admitted evidence, the Commonwealth produced minimal evidence about Carpenter's physical condition after the assault and no evidence about the medical cause of his death." Id.

As to Rodriguez, the jury had found him guilty of murder in the first degree on a theory of extreme atrocity or cruelty. Rodriguez, 931 N.E.2d at 25-26. On appeal, the SJC reduced his conviction to murder in the second degree because, although other properly admitted evidence established that Rodriguez had committed an unlawful killing, medical evidence and testimony pertinent to the theory of extreme atrocity or cruelty was erroneously admitted. Id. at 34-39.

-4-

the car a short distance, the victim got out of the vehicle and continued arguing with Tirado. Id. The violence escalated when Marshall and Torres, along with three more of their friends, arrived on the scene outside. Id. With the exception of Torres, all of the men present attacked the victim, including one who hit him with a tire iron. Id. at 27-28. Marshall kicked the victim twice and attempted to throw a trash barrel at him. Id. at 28.

The perpetrators left the victim unconscious on the street, and when police arrived they found him bloody and unconscious. Id. Carpenter died later that day as a result of acute internal hemorrhaging due to blunt force trauma. Id.

A. Trial

The prosecution chose to indict Marshall as an accessory before the fact to murder in the first degree under Mass. Gen. Laws ch. 274, § 2 ("Whoever aids in the commission of a felony, or is accessory thereto before the fact by counselling, hiring or otherwise procuring such felony to be committed, shall be punished in the manner provided for the punishment of the principal felon."). Rodriguez, 931 N.E.2d at 39-40. Marshall was not indicted for the murder itself. Though the indictment charged him with acts before the murder was committed, the Commonwealth proceeded at trial under an "aiding" the murder theory, not under an accessory before the fact theory. Id. at 40. At the close of the state's presentation of evidence, Marshall's counsel moved for

-5-

a required finding of not guilty, arguing that no evidence had been presented that, <u>before the beating</u>, Marshall had in any way "counselled, hired, or otherwise procured" the commission of the felony. <u>Id.</u> The prosecutor agreed, but argued that there was sufficient evidence for the jury to convict on the aiding theory. <u>Id.</u> The trial judge, reasoning that the crime of being an accessory before the fact is "largely identical to the joint venture doctrine," denied the motion, <u>id.</u>, and the jury convicted in February 2006, <u>id.</u> at 25.

B.        <u>First SJC Decision: Commonwealth v. Rodriguez</u>

A co-defendant, Lionel Rodriguez, and Marshall appealed to the SJC. Marshall argued that the denial of his motion was in error because there was insufficient evidence to convict him of being an accessory before the fact. <u>Id.</u> at 40. The SJC agreed with Marshall; it reasoned first that "the actions of one who 'aids' and 'accessories before the fact' are not the same, and are separate and distinct forms of accomplice liability." <u>Id.</u> Given this "separate and distinct" conclusion, the SJC reasoned, "the indictment charging Marshall improperly defined the offense on which he was tried . . . [and] the [trial court] submitted the case to the jury with improper instructions, as [it] told the jury that they could convict Marshall as an accessory before the fact if he 'aided in the commission of the murder of [the victim].'" <u>Id.</u> at 42-43. Those instructions were in error because they were not

consistent with the indictment, which charged conduct that took place before the felony was committed.  Id. at 43.

The SJC added that the evidence did establish Marshall's "active participation in, and presence during, the commission of the felony," and noted that the state "should have simply added Marshall's name to that portion of the indictment alleging murder, without reference to Marshall's acting as an accessory before the fact."[2]  Id.  The SJC concluded that "because the evidence presented was legally insufficient to warrant a finding of Marshall's guilt as an accessory before the fact, Marshall's motion for a required finding of not guilty should have been allowed." Id.  In a footnote, the SJC expressly noted that Marshall could not be retried as an accessory before the fact.  Id. at 43 n.34.

C.        Second SJC Decision: Marshall v. Commonwealth

The Commonwealth indicted Marshall again, this time charging him with murder for his involvement in the killing, pursuant to Mass. Gen. Laws ch. 265, § 1.  Marshall moved to dismiss the indictment, claiming that the second prosecution was barred by double jeopardy, arguing that "murder is a form or a 'species' of lesser included offense to accessory before the fact to murder."  Marshall, 977 N.E.2d at 41 (internal quotation marks omitted).  The state trial judge (who was not the original trial

---

[2]  Petitioner claims that the prosecution chose to indict him as an accessory before the fact "so that [he] would not get the benefit of lesser included crimes such as manslaughter."

judge) denied the motion, and Marshall appealed to a single justice of the SJC pursuant to Mass. Gen. Laws ch. 211, § 3. Id. at 42. The justice reserved judgment and presented the issues to the full SJC. Id.

The SJC rejected Marshall's argument and concluded that the second indictment was not barred by the Double Jeopardy Clause as incorporated. The SJC began from the proposition that "[m]urder, prosecuted on a theory of aiding and abetting, is not a lesser included offense of accessory before the fact to murder. Rather, the two are different species of the same crime." Marshall, 977 N.E.2d at 45. The SJC rejected the portion of Rodriquez that appeared to read "aiding" the commission of a felony to be a "separate and distinct" crime from acting as an accessory before the fact.[3] Marshall, 977 N.E.2d at 46-47. The Marshall court reasoned that "[a]lthough grounded in the language and structure of the statute, [the Rodriquez] construction of § 2 goes too far, and is an outlier among our recent decisions regarding the

---

[3] As the Marshall court explained:
Whether the defendant engages in conduct before the commission of the victim's murder to ensure its accomplishment, aids in its commission by others, or commits the murderous assault himself, he is liable for murder and, if convicted, will be so punished. We cannot say, then, that each is a wholly independent theory of liability.
977 N.E.2d at 47.

-8-

scope of accomplice (or joint venture) liability."[4]  Id. at 45.

Thus, Marshall, addressing a question of state legislative interpretation, modified Rodriquez's interpretation of Massachusetts' murder statutes.

After interpreting the Massachusetts aiding and abetting statute, the SJC turned to the double jeopardy implications of Rodriquez.  The SJC acknowledged that the state cannot retry a defendant when a conviction is overturned for insufficient evidence, but a state may do so

> [1] where other theories (supported by evidence at a first trial) would support a defendant's conviction in the second, see Commonwealth v. Fickett, [526 N.E.2d 1064, 1068 n.4 (Mass. 1988)], or [2] where a conviction is reversed on appeal because of a variance between the indictment and the proof established at trial.  See Commonwealth v. Ohanian, [370 N.E.2d 695, 698 (Mass. 1977)].

---

[4]  In particular, the Marshall court noted its 1997 decision in Commonwealth v. Ortiz, 679 N.E.2d 1007 (Mass. 1997), which found that, "[a]lthough [section two] 'continue[d] to use the term 'before the fact,' the phrase now appears to be a vestige of history, as [recent] statutory changes 'abrogate[d] the distinction between principals and accessories before the fact.'"  Marshall, 977 N.E.2d at 46 (third and fifth alterations in original) (quoting Ortiz, 679 N.E.2d at 1010).

Id. at 47-48.[5]  The Marshall court reasoned that this case falls somewhere between these two "exceptions" to the double jeopardy rule, and that while Rodriguez had not employed the "variance" language precisely, it "essentially concluded . . . that such a variance was fatal: the defendant was convicted of a crime for which he had not been indicted."  Id. at 48.  Ultimately, the SJC concluded, there was no double jeopardy problem with the state's decision to prosecute Marshall for a second time for the crime proved at the first trial.  Id.

---

[5]  Federal law recognizes these exceptions to double jeopardy under the heading "procedural dismissals."  Evans v. Michigan, 133 S. Ct. 1069, 1075 (2013) ("Procedural dismissals include rulings on questions that 'are unrelated to factual guilt or innocence,' but 'which serve other purposes,' including 'a legal judgment that a defendant, although criminally culpable, may not be punished' because of some problem like an error with the indictment." (emphasis added) (quoting United States v. Scott, 437 U.S. 82, 98 & n.11 (1978)));  see, e.g., United States v. Lanzotti, 90 F.3d 1217 (7th Cir. 1996) (allowing new trial where earlier conviction reversed on ground that facts did not support direct violation of Illinois gambling statute and aiding and abetting theory was not fairly communicated by instructions); Parker v. Norris, 64 F.3d 1178, 1180-82 (8th Cir. 1995) (allowing retrial under premeditated murder provision after government charged and convicted defendant under felony murder provision that did not apply to the defendant's acts); United States v. Todd, 964 F.2d 925, 929-30 (9th Cir. 1992) (allowing retrial on related offense of sexual contact where government charged and convicted defendant under sexual intercourse statute that did not apply to defendant's acts); United States v. Miller, 952 F.2d 866, 870-74 (5th Cir. 1992) (allowing retrial on permissible theory of mail fraud after conviction on legally deficient "intangible rights" theory had been overturned); United States v. Davis, 873 F.2d 900, 903-07 (6th Cir. 1989) (same).

-10-

D.         Section 2241 Petition and District Court Decision

Marshall then filed a § 2241 petition in the district court, arguing that because the initial reversal of his conviction was based on insufficient evidence, his second indictment and pending trial were barred by double jeopardy. Marshall v. Bristol Cnty. Superior Court, 951 F. Supp. 2d at 233. He also asserted that the SJC's changing interpretation of the aiding and abetting statute was impermissible as it created an ex post facto law. Id. at 234.

The district court noted that petitioner's ex post facto claim was not raised before the state court and had not been exhausted. It held, however, without any supporting citation, that "exhaustion is not required when the ground for the Writ is double jeopardy." Id. at 234 n.1. The district court did not address the merits of Marshall's ex post facto claim.

As to petitioner's double jeopardy claim, the federal district court agreed with Marshall's characterization of the SJC's decision in Rodriguez as resting on an insufficiency of the evidence finding. The district court held that Marshall's second indictment was prohibited by the Double Jeopardy Clause as incorporated. Id. at 235-36. It cited Burks v. United States, 437 U.S. 1 (1978), in which the Court held that a defendant cannot be tried a second time after a reviewing court has found that the

-11-

evidence presented was insufficient to sustain a guilty verdict.

Id. The district court granted the petition, saying that the state

> cannot be allowed to pick and choose
> successive theories of murder and to proceed
> upon successive trials for each of its new
> theories. The Commonwealth must stand on its
> theory of murder alleged at the first trial or
> otherwise the principle of one trial for each
> crime, which is at the core of the Double
> Jeopardy Clause, would be nullified.

Id. at 236.

The Commonwealth argues to us that the petition should be denied in full for failure to satisfy the exhaustion requirement as to the ex post facto argument, and that, even if Marshall meets the exhaustion requirement, the second indictment does not violate the Double Jeopardy Clause as incorporated.

## II.

"[W]e, as a federal habeas court reviewing a petition under section 2241, must defer to the SJC's findings of fact but must undertake plenary review of that court's resolution of issues of law." Gonzalez v. Justices of Mun. Court of Bos., 382 F.3d 1, 7 (1st Cir. 2004) (citation omitted), judgment vacated on other grounds, 544 U.S. 918 (2005), and reinstated, 420 F.3d 5 (1st Cir. 2005).[6] We review a district court's disposition of a section 2241

---

[6] The Commonwealth does not challenge this de novo standard of review under section 2241, as opposed to the deference owed to a state court under the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d)(1).

petition de novo.  Espinoza v. Sabol, 558 F.3d 83, 91 (1st Cir. 2009).

Petitioner claims two grounds for relief in his § 2241 petition.  First, petitioner claims that, in changing "accessory before the fact" to a "theory" of murder from a separate crime, the SJC's decision in Marshall gave rise to an unconstitutional "ex post facto law."  Second, petitioner claims that his prosecution for murder is barred by the Double Jeopardy Clause.

A.        "Ex Post Facto Law": Unexhausted But Frivolous

Petitioner claims first that the SJC's decision in Marshall, 977 N.E.2d at 45 -- characterizing accessory before the fact as a separate theory of murder as opposed to a separate offense, abrogating the portion of Rodriquez interpreting the Massachusetts aiding and abetting statute -- had the effect of "creat[ing] an ex post facto law for Mr. Marshall in violation of Article I of the U.S. Constitution."  Petitioner failed to exhaust state remedies with respect to this claim.  We reject it on the merits nonetheless.[7]

Ordinarily, "[p]rinciples of comity and federalism push in favor of giving state courts, without premature federal interference, a meaningful opportunity to consider, and if

_____

[7] Because we reach the merits of petitioner's "ex post facto law" claim, we need not decide whether the "total exhaustion requirement" that applies to habeas petitions filed pursuant to 18 U.S.C. § 2254, Rhines v. Weber, 544 U.S. 269, 274-78 (2005), also applies to petitions filed pursuant to 18 U.S.C. § 2241.

-13-

necessary to correct, claims of legal error in state criminal prosecutions."  Pike v. Guarino, 492 F.3d 61, 71 (1st Cir. 2007). However, "exhaustion is a prudential principle rather than a jurisdictional limitation," id., and "where, as here, a habeas petitioner's unexhausted claim is patently without merit, . . . the interests of judicial economy" recommend "dispos[ing] of that claim once and for all," Coningford v. Rhode Island, 640 F.3d 478, 483 (1st Cir. 2011); see also Granberry v. Greer, 481 U.S. 129, 135 (1987) (explaining that a federal habeas court may reach the merits of an unexhausted claim "if it is perfectly clear that the applicant does not raise even a colorable federal claim").

For the same reason, this court need not decide whether to abstain from deciding petitioner's ex post facto claim under Younger v. Harris, 401 U.S. 37, 44-45 (1971), which cautions that federal courts should generally refrain from enjoining pending state court proceedings.[8]  Like exhaustion, "Younger is not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity."  Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 74 (2d Cir. 2003); accord Benavidez v. Eu, 34 F.3d 825, 829 (9th Cir. 1994) ("Younger abstention is not jurisdictional, but reflects a court's prudential

---

[8]    The issue of Younger abstention was not raised by the Commonwealth in the district court.  We do not address the issue of whether the Commonwealth's waiver would be excused.

-14-

decision not to exercise jurisdiction which it in fact possesses." (emphasis in original)).  The interest of comity is not advanced by forcing state courts to consider frivolous claims.  In addition, the Commonwealth has itself asked for dismissal on the grounds that petitioner's ex post facto claim is without merit and has extensively briefed the issue.

"As the text of the [Ex Post Facto] Clause makes clear, it 'is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government.'" Rogers v. Tennessee, 532 U.S. 451, 456 (2001) (quoting Marks v. United States, 430 U.S. 188, 191 (1977)).  Marshall's "ex post facto law" claim is mislabeled.  He asserts a due process claim. The Supreme Court has recognized that "limitations on ex post facto judicial decisionmaking are inherent in the notion of due process." Rogers, 532 U.S. at 456.

But even recast as a due process argument, petitioner's claim fails.  Constraints on judicial retroactivity are rooted in "core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." Id. at 459 (citing Bouie v. City of Columbia, 378 U.S. 347, 351, 352, 354–355 (1964)). Petitioner cannot seriously contend that he lacked fair notice that

participation in a fatal beating constituted criminal conduct. Petitioner's fair notice claim is utterly meritless.

B.        Double Jeopardy

It is black letter law that "the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient." Burks, 437 U.S. at 18; see also Benton v. Maryland, 395 U.S. 784, 794-95 (1969) (holding that the "double jeopardy" protection of the Fifth Amendment was incorporated into the Fourteenth, and hence also carries to the States). By contrast, where reversal is based upon a variance between the crime charged in the indictment and the crime proved at trial, the Double Jeopardy Clause is no bar to retrial. See Montana v. Hall, 481 U.S. 400, 404 (1987) ("It is clear that the Constitution permits retrial after a conviction is reversed because of a defect in the charging instrument.").

Rodriguez, were it standing alone, could be read as giving conflicting signals. On the one hand, the decision does use the phrase "the evidence was insufficient." 931 N.E.2d at 43. On the other hand, the decision uses that phrase in the context of a discussion emphasizing the mismatch between the crime charged in the indictment and the crime proved at trial.[9] In addition,

---

[9] Rodriguez said:
[T]he indictment charged conduct that took place "before the said felony was committed," an element that we have stated is required under G.L. c. 274, § 2, to establish guilt as an accessory before the

-16-

Rodriguez noted that Marshall could have been convicted pursuant to a corrected indictment. See id. ("To charge Marshall with this conduct, the Commonwealth should have simply added Marshall's name to that portion of the indictment alleging murder, without reference to Marshall's acting as an accessory before the fact.").

By itself, the SJC's decision in Rodriguez could be thought to be ambiguous. Marshall resolved any ambiguity, explaining:

> Although the proof of liability at trial, and the jury instructions that accompanied it, would have sufficed if the defendant had been indicted simply for the murder itself, they were at variance with the wording of the indictment. Although we did not employ this term specifically, we essentially concluded in Rodriguez . . . that such a variance was fatal: the defendant was convicted of a crime for which he had not been indicted.

977 N.E.2d at 48. Marshall held that the reversal in Rodriguez was based upon a defect in the charging instrument, language of "insufficien[cy]" notwithstanding.

And a federal habeas court is bound by that holding. "[T]he meaning attached to an ambiguous prior reversal is a matter

_____

fact. In this case, the evidence was insufficient to satisfy this requirement, for there was no evidence at trial that Marshall, before the felony took place (as was required by the indictment, the statutory prescribed indictment form, and G.L. c. 274, § 2), counselled, hired, or otherwise procured the felony to be committed. Rather, the evidence established his active participation in, and presence during, the commission of the felony.

931 N.E.2d at 43 (emphasis added).

-17-

of state law." Tibbs, 457 U.S. at 47 n.24 (citing Greene v. Massey, 437 U.S. 19 (1978)). For that reason, the SJC's "construction of its prior opinion binds this Court." Id. at 46-47. We are similarly bound by the state court's construction of its state statutes and other issues of state law. E.g., Wisconsin v. Mitchell, 508 U.S. 476, 483 (1993) ("There is no doubt that we are bound by a state court's construction of a state statute.").

The Supreme Court addressed a similar situation in Tibbs. In that case, the Florida Supreme Court's initial decision reversing the defendant's conviction left unclear whether reversal was based on "insufficient evidence" or rather on "weight of the evidence." 457 U.S. at 38-39. Following a retrial and conviction, the Florida Supreme Court issued a second opinion clarifying that its earlier reversal had been based on "weight of the evidence." Id. The defendant argued on appeal, among other things, that the earlier reversal had, in fact, been based upon insufficiency, and, as a result, that the Double Jeopardy Clause as incorporated barred his retrial. The Supreme Court affirmed the conviction following retrial, reasoning that "[a]ny ambiguity in Tibbs I . . . was resolved by the Florida Supreme Court in Tibbs II." Id. at 46. The state court's "bind[ing]" construction of its earlier decision established that the defendant's "successful appeal of his conviction rested upon a finding that the conviction was against the weight of the evidence, not upon a holding that the evidence

-18-

was legally insufficient to support the verdict." Id. at 46-47. "Under these circumstances," the Court concluded, "the Double Jeopardy Clause does not bar retrial." Id. at 47. On like reasoning, we conclude that the grant of the petition here was in error.

## III.

The district court's grant of petitioner's request for habeas relief is reversed. Habeas relief is barred, and the petition is dismissed with prejudice.