TORRUELLA, Circuit Judge.
Appellant, the United States, appeals the district court’s order dismissing an indictment against Appellees Richard Szpyt and Ramón Dellosantos (collectively, “Appellees” or “Defendants”) as a violation of the Fifth Amendment’s Double Jeopardy Clause. Specifically, the United States contends that the current indictment alleges a factually distinct and separate conspiracy from an earlier, related indictment and conviction which this court vacated due to a material variance. Appellees, meanwhile, contend that the dismissal was proper because their first convictions were vacated due to the insufficiency of the evidence and the current indictment is merely charging a subset of the broader conspiracy they were acquitted of. After careful consideration, we agree with the government and reverse.
I. Background[1]
On October 22, 2008, the government returned an indictment charging Szpyt, Dellosantos, and sixteen others (the “First Indictment”). According to the First Indictment:
Beginning on a date unknown, but not later than 2004 and continuing until a date unknown, but no earlier than December 2007, in the District of Maine and elsewhere, Defendants ... knowingly and intentionally conspired with one another and with others known and unknown to the Grand Jury to commit offenses against the United States, namely, distribution and possession with intent to distribute controlled substances, including 5 kilograms or more of cocaine, and marijuana, and did aid and abet such conduct.
At trial, the government presented evidence from a number of witnesses, including several cooperating witnesses. The evidence showed that from 2004 to 2007 (until their arrest), Szpyt and Dellosantos, both residents of Massachusetts, sold cocaine which they received solely from Plino Vizcaíno, a Massachusetts-based drug distributor. Specifically, Dellosantos would purchase cocaine from Vizcaíno and later sell some of that cocaine to Szpyt.
Szpyt, after purchasing cocaine from Dellosantos, would sometimes sell it from his Massachusetts home to his Maine customers and, other times, deliver it directly to his Maine customers. Both Szpyt and many of his Maine customers were mem *34 bers of the “Iron Horsemen” motorcycle gang. Not only was Szpyt formerly the president of the Maine chapter of the Iron Horsemen, but he was also the owner of the gang’s Maine clubhouse.
During this same time frame, one of Szpyt’s fellow gang members and cocaine customers, Robert Sanborn, also sold co- . caine to motorcycle gangs in Maine. He obtained his cocaine primarily, but not exclusively, from Szpyt. In addition to selling cocaine, Sanborn also sold marijuana to customers in Maine, starting sometime in 2005 and ending in either late 2007 or early 2008, following his arrest. Sanborn obtained his marijuana from sources unaffiliated with Szpyt and Dellosantos.[2] San-born did, however, sometimes use the proceeds from his marijuana sales to buy cocaine from Szpyt.
Twice during the trial, both Szpyt and Dellosantos moved for judgments of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure: once at the close of the government’s case and once at the close of their own cases. The district court denied the motions. Subsequently, on May 13, 2009, Szpyt and Dellosantos, along with ’ one other defendant,[3] were found guilty of conspiracy to distribute and possess with intent to distribute cocaine and marijuana. In addition, the jury found Szpyt guilty of using a communication facility to facilitate the commission of the charged conspiracy.
On appeal, Appellees asserted that “the evidence presented at trial was insufficient to support their convictions.” In a 2-1 decision, we reversed, finding that
there was insufficient evidence to support the finding of a single conspiracy. Rather, the evidence pointed to at least two distinct conspiracies: (1) the Massachusetts-based Vizcaino-Dellosantos-Szpyt conspiracy to distribute cocaine, and (2) the Maine-based Sanborn-centered conspiracy to distribute both cocaine and marijuana.
Dellosantos, 649 F.3d at 119. In coming to this conclusion, we were
[mjindful of this variance, [and found] that the Defendants’ convictions cannot stand for two reasons. First, we f[ou]nd that the evidence was insufficient to support a verdict that either Szpyt or Dellosantos knowingly and voluntarily joined the Sanborn-centered conspiracy to distribute both cocaine and marijuana. Second, assuming without deciding that the evidence was sufficient to permit a jury to find the Defendants guilty of joining the Vizcaino-Dellosantos-Szpyt conspiracy to distribute cocaine, we f[ou]nd that the Defendants would be unfairly prejudiced by the difference between the conspiracy specified in the indictment and the Vizcaino-Dellosantos-Szpyt conspiracy to distribute cocaine.
Id. at 121.
After opining on why the evidence was insufficient to conclude beyond a reasonable doubt that the Appellees joined the Sanborn-centered conspiracy to distribute both cocaine and marijuana, we then turned to “whether the Defendants’ convictions c[ould] nonetheless stand based on a finding that the Defendants joined the other conspiracy proven by the United States, *35 i.e., the Vizcaino-Dellosantos-Szpyt conspiracy to distribute cocaine.” Id. at 124. Looking at this conspiracy, we concluded that “the evidence was arguably sufficient to support a finding that the Defendants joined the other conspiracy proven by the government.” Id. We added that “because the statutory violation for joining the Vizcaino-Dellosantos-Szpyt conspiracy re’main[ed] the same as that alleged in the indictment, the jury, under a proper set of instructions, could arguably have convicted the Defendants of participating in the Vizcaino-Dellosantos-Szpyt conspiracy so long as the difference between the conspiracy specified in the indictment and the Vizcaino-Dellosantos-Szpyt conspiracy ‘d[id] not cause unfair prejudice.’ ” Id.
Despite the sufficiency of the evidence on the Vizcaino-Dellosantos-Szpyt cocaine-only conspiracy, though, we found that the convictions could not stand. We held that “the difference between the conspiracy specified in the indictment and the Vizcaino-Dellosantos-Szpyt conspiracy .unfairly prejudiced the Defendants,” id. at 125, because
under the guise of its single conspiracy theory, the government subjected the Defendants to voluminous testimony relating to unconnected crimes in which they took no part. This situation created a pervasive risk of “evidentiary spillover,” where the jury might have unfairly transferred to the Defendants the guilt relating to the other sixteen indicted individuals.
Id. In conclusion, we crystallized our holding:
The evidence established at least two conspiracies, (1) the Sanborn-centered conspiracy, and (2) the Vizcaino-Dellosantos-Szpyt conspiracy. With regards to the first conspiracy (i.e., the Sanborncentered conspiracy), the evidence was insufficient to support a finding that the Defendants joined the same. In addition, although the evidence was arguably sufficient to support a finding that the Defendants joined the second conspiracy proven (i.e., the Vizcaino-Dellosantos-Szpyt conspiracy), we find that the variance between the conspiracy specified in the indictment and the Vizcaino-Dellosantos-Szpyt conspiracy unfairly prejudiced the Defendants.
Id. at 125-26. As a result, the court “vacate[d] both Dellosantos’ and Szpyt’s convictions.” Id. at 126.
Following the vacatur, the district court entered a judgment of acquittal. The government, meanwhile, obtained a new indictment against Szpyt and Dellosantos (the “Current Indictment”). According to this indictment:
Beginning on a date unknown, but not later than 2006 and continuing until a date unknown, but no earlier than December 2007, in the District of Maine, and elsewhere, Defendants ... knowingly and intentionally conspired with one another and with others known and unknown to the Grand Jury to commit an offense against the United States, namely, distribution and possession with intent to distribute 5 kilograms or more of a mixture or substance containing cocaine, and did aid and abet such conduct.
In response to the Current Indictment, Szpyt and Dellosantos separately filed motions to dismiss on double jeopardy grounds. On April 3, 2013, the district court granted the motions and dismissed the Current Indictment. It reasoned that the two conspiracies “amount to the same offense” because the time frame of the cocaine-only conspiracy is “completely subsumed” in the time frame of the cocaine- and-marijuana conspiracy, because there was a complete overlap of personnel involved, and because the government would not present any new evidence in a second *36 trial. As such, it deemed that the Current Indictment charged a conspiracy that was simply a “chapter[ ]” of the “Szpyt I novel.”
On April 25, 2018, the government timely filed a notice of appeal challenging the district court’s dismissal of the Current Indictment.
II. Discussion
A. Double Jeopardy
Because this is a question of constitutional law, we review the district court’s dismissal of the indictment on double jeopardy grounds de novo. See United States v. García-Ortiz, 657 F.3d 25, 28 (1st Cir. 2011).
As a quick primer, the Fifth Amendment’s Double Jeopardy Clause guarantees that no person shall “be subject for the same offence to be twice put in jeopardy of life or limb.” U.S. Const. amend. V. Thus, “once [a] reviewing court has found the evidence legally insufficient,” a second trial is “preclude[d].” Marshall v. Bristol Superior Court, 753 F.3d 10, 18 (1st Cir.2014) (quoting Burks v. United States, 437 U.S. 1, 18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)) (internal quotation marks omitted). “It is a ‘venerable principle] of double jeopardy jurisprudence’” however, that “‘[t]he successful appeal of a judgment of conviction, on- any ground other than the insufficiency of the evidence to support the verdict, poses no bar to further prosecution on the same charge.’ ” Montana v. Hall, 481 U.S. 400, 402, 107 S.Ct. 1825, 95 L.Ed.2d 354 (1987) (alteration in original) (internal citation omitted) (quoting United States v. Scott, 437 U.S. 82, 90-91, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978)). A material variance falls into this latter category. Marshall, 753 F.3d at 18 (“[W]here reversal is based upon .a variance between the crime charged in the indictment and the crime proved at trial, the Double Jeopardy Clause is no bar to retrial.”); see also United States v. Bobo, 419 F.3d 1264, 1267 (11th Cir.2005) (“It has long been accepted, for example, that retrial is not barred when a defendant’s conviction is vacated on appeal due to an insufficient indictment....”); Parker v. Norris, 64 F.3d 1178, 1181 (8th Cir.1995) (“It is clear that" the Constitution permits retrial after a conviction is reversed because of a defect in the charging instrument.” (quoting Hall, 481 U.S. at 404, 107 S.Ct. 1825) (internal quotation marks omitted)).
Any double jeopardy analysis essentially splinters into three questions: (1) whether jeopardy ever attached; (2) whether the first proceeding was a decision on the merits; and (3) whether the subsequent proceeding involves the “same offense.” See United States v. Pacheco, 434 F.3d 106, 112 (1st Cir.2006). Only questions two and three are implicated in this case. Here, the parties dispute why Appellees’ convictions were vacated in Dellosantos, and whether that decision was, in fact, on the merits. The government argues that our opinion in Dellosantos vacated Appellees’ convictions due to a material variance — a procedural ground not subject to double jeopardy. See Hall, 481 U.S. at 402-03,107 S.Ct. 1825; Marshall, 753 F.3d at 18. Appellees, meanwhile, argue that we vacated their convictions due to insufficient evidence — a substantive ruling “relate[d] to the ultimate question of guilt or innocence” and protected from retrial under the Double Jeopardy Clause. See Evans v. Michigan, — U.S.-, 133 S.Ct. 1069, 1075, 185 L.Ed.2d 124 (2013) (quoting Scott, 437 U.S. at 98 n. 11, 98 S.Ct. 2187) (internal quotation marks omitted); United States v. Martin Linen Supply Co., 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); Marshall, 753 F.3d at
*37 18. A careful reading of Dellosantos reveals that we did both.
In Dellosantos, we initially explained that while “the indictment charged the Defendants with participation in a single Maine-based conspiracy to distribute and possess with intent to distribute both cocaine and marijuana,” 649 F.3d at 121, there was “insufficient evidence to support the finding of a single conspiracy,” id. at 119. Rather, the evidence “established the existence of at least two distinct conspiracies: (1) the Massachusetts-based Vizcaino-Dellosantos-Szpyt conspiracy to distribute cocaine, and (2) the Maine-based Sanborn-centered conspiracy to distribute both cocaine and marijuana.” Id. at 121. As such, because the charged conspiracy never existed, it was necessary to analyze each of these distinct conspiracies to evaluate whether there was sufficient evidence to support a conviction, and, if so, whether the variance between the charged conspiracy and the conspiracy proven was prejudicial. Id. at 122, 124. The analysis for each conspiracy resulted in an independent holding — each with its own consequence and implication for future proceedings.
Regarding the second conspiracy — the Maine-based Sanborn-centered conspiracy to distribute both cocaine and marijuana— we held that “the evidence was insufficient to support a verdict that either Szpyt or Dellosantos knowingly and voluntarily joined.” Id. at 121. This was clearly a substantive ruling that went to the ultimate question of guilt or innocence. As a result, any attempt to re-indict Appellees on that conspiracy would be barred by the Double Jeopardy Clause. See, e.g., Marshall, 753 F.3d at 18 (“It is black letter law that ‘the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient.’ ” (quoting Burks, 437 U.S. at 18, 98 S.Ct. 2141)); United States v. Meléndez-Rivas, 566 F.3d 41, 43 (1st Cir.2009) (explaining that if “the evidence was insufficient ... then the case ends and [defendant] may not be tried again”).
But our analysis in Dellosantos did not end there. Instead, we then “turn[ed] to whether the Defendants’ convictions 'can nonetheless stand based on a finding that the Defendants joined the other conspiracy proven by the government, i.e., the Vizcaino-Dellosantos-Szpyt conspiracy to distribute cocaine.” Dellosantos, 649 F.3d at 124. In analyzing this conspiracy, we held that “although the evidence was arguably sufficient to support a finding that the Defendants joined the second conspiracy proven (i.e., the Vizcaino-Dellosantos-Szpyt conspiracy), ... the variance between the conspiracy specified in the indictment and the Vizcaino-Dellosantos-Szpyt conspiracy unfairly prejudiced the Defendants.” Id. at 125-26. We explained that
under the guise of its single conspiracy theory, the government subjected the Defendants to voluminous testimony relating to unconnected crimes in which they took no part. This situation created a pervasive risk of “evidentiary spillover,” where the jury might have unfairly transferred to the Defendants the guilt relating to the other sixteen indicted individuals.
Id. at 125.
Unlike our substantive holding regarding the Sanborn-centered cocaine-and-marijuana conspiracy, our holding regarding this Vizcaino-Dellosantos-Szpyt cocaine-only conspiracy was procedural— there was a problem with the initial indictment — and had nothing to do with either the sufficiency of the evidence 6r Appel *38 lees’ guilt or innocence.[4] Accordingly, the Double Jeopardy Clause “poses no bar to further prosecution” on it. Hall, 481 U.S. at 402, 107 S.Ct. 1825 (quoting Scott, 437 U.S. at 90-91, 98 S.Ct. 2187) (internal quotation marks omitted); see Marshall, 753 F.3d at 18 (“[W]here reversal is based upon a variance between the crime charged in the indictment and the crime proved at trial, the Double Jeopardy Clause is no bar to retrial.”); see also United States v. Akpi 26 F.3d 24, 26 (4th Cir.1994) (finding no double jeopardy violation where Appellant “took his first appeal to correct an error based on a defective indictment” because the “defect in no way related to the sufficiency of the evidence but only to the manner in which he was charged” and the reversal “was on a most technical ground, particularly when it is remembered that the government presented ample evidence at trial”); Hunter v. New Mexico, 916 F.2d 595, 599, 600 (10th Cir.1990) (“[T]he jury was allowed to convict [Appellant] on a different set of facts than those set forth in the information .... Consequently, we hold the modified jury instruction constituted a constructive amendment of the information which requires reversal.... [T]he case [is] remanded for a new trial on that charge.”). It is this Vizcaíno-Dellosantos-Szpyt cocaine-only conspiracy that is charged in the Current Indictment.
The district court’s entry of an order of acquittal on the First Indictment does not alter this conclusion. An acquittal “is not to be controlled by the form of the judge’s actions,” but rather by “whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.” Martin Linen Supply Co., 430 U.S. at 571, 97 S.Ct. 1349; see also United States v. Hosp. Monteflores, Inc., 575 F.2d 332, 333 n. 1 (1st Cir.1978). The Supreme Court recently reaffirmed this principle, explaining that a “decision turns not on the form of the trial court’s action, but rather whether it ‘serve[s]’ substantive ‘purposes’ or procedural ones.” Evans, 133 S.Ct. at 1078 (alteration in original) (quoting Scott, 437 U.S. at 98 n. 11, 98 S.Ct. 2187), As an example, it observed that “[i]f a trial court were to announce, mid-trial, ‘The defendant shall be acquitted because he was prejudiced by preindictment delay,’ the Double Jeopardy clause would pose no barrier to reprosecution, notwithstanding the ‘acquittal’ label.” Id. (emphasis added).
Though arising in a slightly different context, the same principle applies here. Dellosanios held that: (1) there was no Maine-Massachusetts overarching conspiracy to distribute both cocaine and marijuana; (2) there was insufficient evidence to convict on the Sanborn-centered marijuana and cocaine conspiracy; and (3) though there was arguably enough evidence, it would constitute a material variance to allow a conviction to stand on the distinct Vizcaíno-Dellosantos-Szpyt cocaine-only conspiracy. Regarding this dis *39 tinct Vizcaino-Dellosantos-Szpyt cocaine-only conspiracy, therefore, Defendants prevailed on a procedural issue; the merits of this separate crime were never decided, and the district court’s use of the word “acquittal” does not change that fact. It is clear to us that the entry of “acquittal” was intended to be no different than had the government on remand moved to dismiss without prejudice or to amend the indictment — both of which would not have been barred by the Double Jeopardy clause.[5] As such, the Current Indictment does not constitute a re-prosecution on the same crime and there is no double jeopardy violation.
Still, despite the analyses and holdings in Dellosantos, Appellees argue that the government is seeking to prove the “same offense” in this subsequent proceeding. They argue that an application of the “more nuanced form of the same evidence test” as explained in United States v. Laguna-Estela, 394 F.3d 54, 57 (1st Cir. 2005), and United States v. Hart, 933 F.2d 80, 85-86 (1st Cir.1991), is required.[6] That test, they say, necessitates a finding that the Current Indictment is just a subset of the overarching conspiracy charged in the First Indictment, and that both indictments charge Appellees for their participation in one single conspiracy. However, Appellees seemingly overlook the fact that Dellosantos explicitly rejected the argument that there existed only one overarching conspiracy. On at least six different occasions, we emphasized that this overarching conspiracy did not exist, but rather that the “evidence established at least two conspiracies” which were “distinct” and separate from each other. See, e.g., Dellosantos, 649 F.3d at 117, 119, 121, 122, 124, 125. We explained that: “the two conspiracies had materially different goals,” id: at 119; that “the two conspiracies lacked sufficient interdependence,” id.; that “nothing was presented to the jury to suggest that either [Appellee] believed that the success of their cocaine distribution operation likely depended on San-born’s marijuana distribution venture,” id.; that “the ventures [did not] share the objective of serving a particular organization or boss,” id.; that no “individual or group had an ‘iron-fisted control’ over the two distribution schemes” but rather each scheme used different suppliers, id.; and that “Sanborn was not the type of ‘hub’ character that frequently exists in cases where this court has found significant overlap and an overarching conspiracy,” id. at 121.
In sum, we concluded that the “Vizcaino-Dellosantos-Szpyt criminal conspiracy to -distribute cocaine was a different criminal enterprise than the [Sanborn-centered] marijuana enterprise, with different products, a different source of supply, different *40 goals, and a different history.” Id.; see also United States v. Calderone, 982 F.2d 42, 47 (2d Cir.l992) (“[W]e have held conspiracies to be different where the facts of a smaller conspiracy ... such as time and geography, were wholly contained within a larger conspiracy so long as there were sufficient factors that shared only a slight overlap of facts or none at all.”); United States v. Thomas, 759 F.2d 659, 662 (8th Cir.1985) (“The essence of the determination is whether there is one agreement to commit two crimes, or more than one agreement, each with a separate object.”). There is little question that the government is free to bring separate charges on a different, though similar, conspiracy. See, e.g., United States v. Félix, 503 U.S. 378, 386, 387, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992) (explaining that “a mere overlap in proof between two prosecutions does not establish a double jeopardy violation” and that “the introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct”); United States v. Morris, 99 F.3d 476, 480 (1st Cir.1996) (rejecting double jeopardy claim despite the two conspiracies taking place contemporaneously, involving essentially the same personnel, occurring at much the same places, and involving most of the same evidence because the conspiracies involved different primary goals and thus separate statutory provisions); Hart, 933 F.2d at 85 (“The fact that both counts against [plaintiff] implicate the same statutory violations does not in itself create a double jeopardy bar---[Plaintiff] could have been tried separately for the two similar but separate conspiracies.”); Kerrigan v. United States, 644 F.2d 47, 49 (1st Cir.1981) (“[I]ndictments charging two or more agreements, even agreements to commit similar or related crimes, charge more than one conspiracy.” (citing Braverman v. United States, 317 U.S. 49, 52, 63 S.Ct. 99, 87 L.Ed. 23 (1942))); see also United States v. Ziskin, 360 F.3d 934, 943-48 (9th Cir.2003) (finding no double jeopardy violation because defendant was indicted on two separate yet similar conspiracies and not one overarching conspiracy). This is especially true when the convictions were reversed due to a material variance and not due to the insufficiency of the evidence.[7]
*41 We recognize that the resolution of this case is driven almost exclusively by our decision in Dellosantos. Indeed, had the jury in that case returned a not-guilty verdict, our analysis today would be limited solely to the indictments in each case and the typical five-factor investigation called for by Lagunar-Estela. Under that scenario, the result would undoubtedly be different. But, because we must give full force to our prior decision,[8] we have no other choice but to conclude that double jeopardy does not bar this indictment.
B. Dellosantos’s Additional Arguments
Recognizing that we may affirm the district court “on any basis made apparent by the record,” McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir.2006), Dellosantos raises two additional arguments to support the dismissal of the Current Indictment. We address each issue briefly, finding neither to have merit.
1. Judicial Estoppel
Dellosantos first contends that the government is judicially estopped from arguing that there are two distinct conspiracies because this position is inconsistent with its initial position that there existed one overarching conspiracy. See InterGen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003) (“As a general matter, the doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of • the same legal proceeding.”). Though the contours of judicial estoppel are “hazy, and there is no mechanical test for determining its applicability,” Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir.2004), three factors have guided us in the past:
First, a party’s later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party’s earlier position.... A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.
United States v. Pakala, 568 F.3d 47, 59 (1st Cir.2009) (quoting Zedner v. United States, 547 U.S. 489, 504, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006)).
Dellosantos is certainly correct that the government has taken mutually exclusive positions in these successive prosecutions, thus satisfying the first factor. The other factors, however, are not met. Contrary to Dellosantos’s claim, the government was not successful in the initial prosecution. Its initial position of one overarching conspiracy—which did admittedly succeed at trial—was ultimately rejected on appeal in Dellosantos. Once the jury’s verdict was vacated, any success the government may have had with its one-overarching-conspiracy position disappeared.
We also reject the contention that the government is deriving an unfair advan *42 tage from this change in position. As the Supreme Court acknowledged in Burks, when a conviction is reversed following a finding of procedural error, not only does “the accused [have] a strong interest in obtaining a fair readjudication of his guilt free from error,” but society also “maintains a valid concern for insuring that the guilty are punished.” 437 U.S. at 15, 98 S.Ct. 2141. Both the jury and our prior decision found sufficient evidence to convict Appellees. There is nothing unfair about allowing the government to retry them following a reversal for a material variance, which is nothing more than a procedural error. Because two of the three considerations for a finding of judicial estoppel are lacking, Dellosantos’s argument fails.[9]
2. Improper Venue
Dellosantos next argues that because. he did not have a relationship with any of the Maine co-conspirators, never lived or worked in Maine, is accused of buying and selling cocaine only in Massachusetts; and entered Maine only for court-related matters, venue in Maine is improper and thus his constitutional rights are being violated. See United, States v. Lanoue, 137 F.3d 656, 661 (1st Cir.1998) (“A defendant in a criminal case has a constitutional right to be tried in a proper venue.”); see also U.S. Const, art. Ill, § 2, cl. 3 (“The Trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed....”); id. amend. VI (“In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed....”). Venue in Maine, however, is appropriate.
In the context of a conspiracy, “venue is proper in any district in which an act in furtherance of the charged conspiracy has taken place.” United States v. Santiago, 83 F.3d 20, 25 (1st Cir.1996). This is true “even if a particular coconspirator was not himself physically present in that district.” Id. While Dellosantos may not have had any ties to Maine, his co-conspirator Szpyt did have such ties. As we explained in Dellosantos, the evidence showed that Szpyt owned the Iron Horsemen clubhouse in Maine and sold cocaine to numerous Iron Horsemen members there, one of those customers being Sanborn. Dellosantos, 649 F.3d at 111-12. Given these facts, the government has met its burden of establishing by a preponderance of the evidence that venue in Maine is proper. See Lanoue, 137 F.3d at 661.
III. Conclusion
In Dellosantos, we rejected the- argument that there existed a single, overarching conspiracy to distribute both cocaine and marijuana. ■ Instead, we held- that there were two independent and distinct conspiracies, each running simultaneously with one another and with very little overlap. While we found insufficient evidence to support Appellees’ convictions on one conspiracy — the Sanborn-centered conspiracy to distribute both cocaine and marijua *43 na — we found that there arguably was sufficient evidence to convict Appellees on the other conspiracy — the uncharged Vizcaino-Dellosantos-Szpyt conspiracy to distribute only cocaine. Nevertheless, we vacated the convictions due to a procedural issue: a material variance between this second conspiracy and the single overarching conspiracy charged in the indictment. Given our holdings in Dellosantos, the government’s decision to bring the Current Indictment charging Appellees with this second conspiracy is not barred by the Double Jeopardy Clause. Dellosantos’s efforts to save the dismissal on the alternate grounds of estoppel and venue also fail. Accordingly, the' district court’s order dismissing the indictment is REVERSED.

. Unless otherwise noted, the information in this section is taken from United States v. Dellosantos, 649 F.3d 109 (1st Cir.2011).

. At trial, Sanborn identified his marijuana sources as Carl Demarco, Lee Chase, Danny Boivin, and Sherwood Jordan. There was "no evidence that Sanborn consulted with or received approval from Szpyt when he started to distribute marijuana, or at any point thereafter,” and no evidence that "directly implicate[d] Dellosantos in any illegal [marijuana] activity.”

. The other fifteen co-conspirators all pleaded guilty prior to trial.

. Indeed, unlike the Sanborn-centered conspiracy to distribute both cocaine and marijuana, the entire panel believed there was, at least arguably, sufficient evidence to sustain the convictions on this independent Vizcaino-Dellosantos-Szpyt cocaine-only conspiracy. E.g., Dellosanios, 649 F.3d at 124 ("[T]he jury, under a proper set of instructions, could arguably have convicted the Defendants of participating in the Vizcaino-Dellosantos-Szpyt conspiracy....”); id. at 125 (‘TTjhe evidence was arguably sufficient to support a finding that the Defendants joined the second conspiracy proven (i.e., the Vizcaino-Dellosantos-Szpyt conspiracy)....”); id. at 126 (Howard, J., concurring in part and dissenting in part) (finding that "[e]ven under [the majority’s] framework, there was sufficient evidence to convict Szpyt” and possibly Dellosantos).

. This, of course, only applies to the distinct Vizcaino-Dellosantos-Szpyt cocaine-only conspiracy. Because we found in Dellosantos that there was insufficient evidence to convict Appellees on the Sanborn-centered cocaine- and-marijuana conspiracy, the district court’s entry of acquittal as applied to that conspiracy was just that: an acquittal based on the merits. Thus, had the government attempted to re-indict Appellees on the Sanborn-centered conspiracy to distribute both cocaine and marijuana, the entry of acquittal and the Double Jeopardy Clause would have barred any further prosecution.'

. In those cases, we "identified five factors that must be considered” in determining whether "two charged conspiracies that allege violations of the same substantive statute are the same offense for the purpose of double jeopardy.” Laguna-Estela, 394 F.3d at 57. These include: (1) the time during which the activities occurred; (2) the persons involved; (3) the places involved; (4) whether the same evidence was used to prove the two conspiracies; and (5) whether the same statutory provision was involved in both conspiracies. Id.; see also Hart, 933 F.2d at 85-86.

. This is a far cry from the district court's pronouncement that the "Government now essentially seeks to rip the 'Vizcaino-Dellosantos-Szpyt conspiracy' chapters from its Szpyt I novel and present those very pages to a new jury in hopes that it can secure a conviction of the Defendants on this smaller conspiracy." Though the district court apparently viewed the evidence differently, Dellosantos found not one overarching conspiracy but rather two simultaneous yet distinct conspiracies. It is impossible to conclude— as both the district court and . the dissent attempt to do — that the Vizcaino-Dellosantos-Szpyt conspiracy is just a smaller part of a larger overarching conspiracy when that supposed overarching conspiracy was found to never have existed in the first place. Regardless of whether or not the district court's application of Laguna-Estela and Hall would have withstood scrutiny and been affirmed in the first instance, the findings in Dellosantos mandate the opposite result and are binding under res judicata. See Sealfon v. United States, 332 U.S. 575, 578, 68 S.Ct. 237, 92 L.Ed. 180 (1948) (explaining that res judicata "applies to criminal as well as civil proceedings"); Global NAPs, Inc. v. Verizon New Eng., 603 F.3d 71, 95 (1st Cir.2010) (“Issue preclusion requires that (1) both proceedings involved the same issue of law or fact, (2) the parties actually litigated that issue, (3) the prior court decided that issue in a final judgment, and (4) resolution of that issue was essential to judgment on the merits.”); Negrón-Fuentes v. UPS Supply Chain Solutions, 532 F.3d 1, 7 (1st Cir.2008) ("In general terms ..., issue preclusion renders conclusive the determinations reached in previous law suits between the same (and, sometimes, different) parties.”). Our dissenting colleague’s suggestion that these findings were not essential to the judgment on the merits in Dellosantos just further highlights its misreading of *41 Dellosantos. Dellosantos’s findings of two simultaneous yet distinct conspiracies, and not one overarching conspiracy, were the entire foundation for our holding that there was a material and prejudicial variance mandating reversal.

. Though the dissent suggests that we are attempting to revisit Dellosantos, it is actually the dissent that is doing so. Despite Dellosantos 's holding to the contrary, the dissent insists on characterizing the Current Indictment as a "narrower” charge and a "portion” of the First indictment. At the same time, it disregards Dellosantos's entire variance analysis.

. We also note that Dellosantos’s argument cuts both ways. Like the government, Dellosantos is taking an opposite position here. In the prior prosecution and before us in Dellosantos, Dellosantos argued that the evidence was insufficient because there were multiple conspiracies; now he argues that the two conspiracies were really just part of one overarching conspiracy. If anything, the case for judicial estoppel would be stronger against Dellosantos because his initial position of two distinct conspiracies did succeed in the earlier proceedings and because he is now attempting to escape punishment for his crime despite a jury finding him guilty beyond a reasonable doubt and this court finding sufficient evidence in the record to support that verdict.