# United States Court of Appeals
## For the First Circuit

No. 13-1543

UNITED STATES OF AMERICA,

Appellant,

v.

RICHARD W. SZPYT, a/k/a Zip;
RAMÓN DELLOSANTOS, a/k/a José Ramón, a/k/a Monstrito,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Torruella, Howard, and Kayatta,
Circuit Judges.

Margaret D. McGaughey, Assistant United States Attorney, with whom Thomas E. Delahanty II, United States Attorney, was on brief, for appellant.
Caleigh Shea Milton, with whom Leonard I. Sharon, were on brief, for appellee Szpyt.
James S. Hewes, for appellee Dellosantos.

April 3, 2015

**TORRUELLA, Circuit Judge**. Appellant, the United States, appeals the district court's order dismissing an indictment against Appellees Richard Szpyt and Ramón Dellosantos (collectively, "Appellees" or "Defendants") as a violation of the Fifth Amendment's Double Jeopardy Clause. Specifically, the United States contends that the current indictment alleges a factually distinct and separate conspiracy from an earlier, related indictment and conviction which this court vacated due to a material variance. Appellees, meanwhile, contend that the dismissal was proper because their first convictions were vacated due to the insufficiency of the evidence and the current indictment is merely charging a subset of the broader conspiracy they were acquitted of. After careful consideration, we agree with the government and reverse.

## I. Background[1]

On October 22, 2008, the government returned an indictment charging Szpyt, Dellosantos, and sixteen others (the "First Indictment"). According to the First Indictment:

> Beginning on a date unknown, but not later than 2004 and continuing until a date unknown, but no earlier than December 2007, in the District of Maine and elsewhere, Defendants . . . knowingly and intentionally conspired with one another and with others known and unknown to the Grand Jury to commit offenses against the United States, namely,

---

[1] Unless otherwise noted, the information in this section is taken from United States v. Dellosantos, 649 F.3d 109 (1st Cir. 2011).

-2-

distribution and possession with intent to
distribute controlled substances, including 5
kilograms or more of cocaine, and marijuana,
and did aid and abet such conduct.

At trial, the government presented evidence from a number
of witnesses, including several cooperating witnesses. The
evidence showed that from 2004 to 2007 (until their arrest), Szpyt
and Dellosantos, both residents of Massachusetts, sold cocaine
which they received solely from Plino Vizcaíno, a Massachusetts-
based drug distributor. Specifically, Dellosantos would purchase
cocaine from Vizcaíno and later sell some of that cocaine to Szpyt.

Szpyt, after purchasing cocaine from Dellosantos, would
sometimes sell it from his Massachusetts home to his Maine
customers and, other times, deliver it directly to his Maine
customers. Both Szpyt and many of his Maine customers were members
of the "Iron Horsemen" motorcycle gang. Not only was Szpyt
formerly the president of the Maine chapter of the Iron Horsemen,
but he was also the owner of the gang's Maine clubhouse.

During this same time frame, one of Szpyt's fellow gang
members and cocaine customers, Robert Sanborn, also sold cocaine to
motorcycle gangs in Maine. He obtained his cocaine primarily, but
not exclusively, from Szpyt. In addition to selling cocaine,
Sanborn also sold marijuana to customers in Maine, starting some-
time in 2005 and ending in either late 2007 or early 2008,
following his arrest. Sanborn obtained his marijuana from sources

unaffiliated with Szpyt and Dellosantos.[2] Sanborn did, however, sometimes use the proceeds from his marijuana sales to buy cocaine from Szpyt.

Twice during the trial, both Szpyt and Dellosantos moved for judgments of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure: once at the close of the government's case and once at the close of their own cases. The district court denied the motions. Subsequently, on May 13, 2009, Szpyt and Dellosantos, along with one other defendant,[3] were found guilty of conspiracy to distribute and possess with intent to distribute cocaine and marijuana. In addition, the jury found Szpyt guilty of using a communication facility to facilitate the commission of the charged conspiracy.

On appeal, Appellees asserted that "the evidence presented at trial was insufficient to support their convictions." In a 2-1 decision, we reversed, finding that

> there was insufficient evidence to support the finding of a single conspiracy. Rather, the evidence pointed to at least two distinct conspiracies: (1) the Massachusetts-based Vizcaíno-Dellosantos-Szpyt conspiracy to

---

[2] At trial, Sanborn identified his marijuana sources as Carl Demarco, Lee Chase, Danny Boivin, and Sherwood Jordan. There was "no evidence that Sanborn consulted with or received approval from Szpyt when he started to distribute marijuana, or at any point thereafter," and no evidence that "directly implicate[d] Dellosantos in any illegal [marijuana] activity."

[3] The other fifteen co-conspirators all pleaded guilty prior to trial.

distribute cocaine, and (2) the Maine-based Sanborn-centered conspiracy to distribute <u>both</u> cocaine <u>and</u> marijuana.

<u>Dellosantos</u>, 649 F.3d at 119.  In coming to this conclusion, we were

> [m]indful of this variance, [and found] that the Defendants' convictions cannot stand for two reasons.  First, we f[ou]nd that the evidence was insufficient to support a verdict that either Szpyt or Dellosantos knowingly and voluntarily joined the Sanborn-centered conspiracy to distribute <u>both</u> cocaine <u>and</u> marijuana.  Second, assuming without deciding that the evidence was sufficient to permit a jury to find the Defendants guilty of joining the Vizcaíno-Dellosantos-Szpyt conspiracy to distribute cocaine, we f[ou]nd that the Defendants would be unfairly prejudiced by the difference between the conspiracy specified in the indictment and the Vizcaíno-Dellosantos-Szpyt conspiracy to distribute cocaine.

<u>Id.</u> at 121.

After opining on why the evidence was insufficient to conclude beyond a reasonable doubt that the Appellees joined the Sanborn-centered conspiracy to distribute both cocaine and marijuana, we then turned to "whether the Defendants' convictions c[ould] nonetheless stand based on a finding that the Defendants joined the other conspiracy proven by the United States, i.e., the Vizcaíno-Dellosantos-Szpyt conspiracy to distribute cocaine."  <u>Id.</u> at 124.  Looking at this conspiracy, we concluded that "the evidence was arguably sufficient to support a finding that the Defendants joined the other conspiracy proven by the government."  <u>Id.</u>  We added that "because the statutory violation for joining the

-5-

Vizcaíno-Dellosantos-Szpyt conspiracy remain[ed] the same as that alleged in the indictment, the jury, under a proper set of instructions, could arguably have convicted the Defendants of participating in the Vizcaíno-Dellosantos-Szpyt conspiracy so long as the difference between the conspiracy specified in the indictment and the Vizcaíno-Dellosantos-Szpyt conspiracy 'd[id] not cause unfair prejudice.'"  Id.

Despite the sufficiency of the evidence on the Vizcaíno-Dellosantos-Szpyt cocaine-only conspiracy, though, we found that the convictions could not stand.  We held that "the difference between the conspiracy specified in the indictment and the Vizcaíno-Dellosantos-Szpyt conspiracy unfairly prejudiced the Defendants," id. at 125, because

> under the guise of its single conspiracy theory, the government subjected the Defendants to voluminous testimony relating to unconnected crimes in which they took no part. This situation created a pervasive risk of "evidentiary spillover," where the jury might have unfairly transferred to the Defendants the guilt relating to the other sixteen indicted individuals.

Id.  In conclusion, we crystallized our holding:

> The evidence established at least two conspiracies, (1) the Sanborn-centered conspiracy, and (2) the Vizcaíno-Dellosantos-Szpyt conspiracy. With regards to the first conspiracy (i.e., the Sanborn-centered conspiracy), the evidence was insufficient to support a finding that the Defendants joined the same. In addition, although the evidence was arguably sufficient to support a finding that the Defendants joined the second

-6-

> conspiracy proven (i.e., the Vizcaíno-Dellosantos-Szpyt conspiracy), we find that the variance between the conspiracy specified in the indictment and the Vizcaíno-Dellosantos-Szpyt conspiracy unfairly prejudiced the Defendants.

Id. at 125-26. As a result, the court "vacate[d] both Dellosantos' and Szpyt's convictions." Id. at 126.

Following the vacatur, the district court entered a judgment of acquittal. The government, meanwhile, obtained a new indictment against Szpyt and Dellosantos (the "Current Indictment"). According to this indictment:

> Beginning on a date unknown, but not later than 2006 and continuing until a date unknown, but no earlier than December 2007, in the District of Maine and elsewhere, Defendants . . . knowingly and intentionally conspired with one another and with others known and unknown to the Grand Jury to commit an offense against the United States, namely, distribution and possession with intent to distribute 5 kilograms or more of a mixture or substance containing cocaine, and did aid and abet such conduct.

In response to the Current Indictment, Szpyt and Dellosantos separately filed motions to dismiss on double jeopardy grounds. On April 3, 2013, the district court granted the motions and dismissed the Current Indictment. It reasoned that the two conspiracies "amount to the same offense" because the time frame of the cocaine-only conspiracy is "completely subsumed" in the time frame of the cocaine-and-marijuana conspiracy, because there was a complete overlap of personnel involved, and because the government would not

-7-

present any new evidence in a second trial. As such, it deemed that the Current Indictment charged a conspiracy that was simply a "chapter[]" of the "Szpyt I novel."

On April 25, 2013, the government timely filed a notice of appeal challenging the district court's dismissal of the Current Indictment.

## II. Discussion

### A. Double Jeopardy

Because this is a question of constitutional law, we review the district court's dismissal of the indictment on double jeopardy grounds de novo. See United States v. García-Ortiz, 657 F.3d 25, 28 (1st Cir. 2011).

As a quick primer, the Fifth Amendment's Double Jeopardy Clause guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Thus, "once [a] reviewing court has found the evidence legally insufficient," a second trial is "preclude[d]." Marshall v. Bristol Superior Court, 753 F.3d 10, 18 (1st Cir. 2014) (quoting Burks v. United States, 437 U.S. 1, 18 (1978)) (internal quotation marks omitted). "It is a 'venerable principl[e] of double jeopardy jurisprudence'" however, that "'[t]he successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, poses no bar to further prosecution on the same charge.'" Montana v. Hall, 481 U.S. 400,

-8-

402 (1987) (alteration in original) (internal citation omitted) (quoting United States v. Scott, 437 U.S. 82, 90-81 (1978)). A material variance falls into this latter category. Marshall, 753 F.3d at 18 ("[W]here reversal is based upon a variance between the crime charged in the indictment and the crime proved at trial, the Double Jeopardy Clause is no bar to retrial."); see also United States v. Bobo, 419 F.3d 1264, 1267 (11th Cir. 2005) ("It has long been accepted, for example, that retrial is not barred when a defendant's conviction is vacated on appeal due to an insufficient indictment . . . ."); Parker v. Norris, 64 F.3d 1178, 1181 (8th Cir. 1995) ("It is clear that the Constitution permits retrial after a conviction is reversed because of a defect in the charging instrument." (quoting Hall, 481 U.S. at 404) (internal quotation marks omitted)).

Any double jeopardy analysis essentially splinters into three questions: (1) whether jeopardy ever attached; (2) whether the first proceeding was a decision on the merits; and (3) whether the subsequent proceeding involves the "same offense." See United States v. Pacheco, 434 F.3d 106, 112 (1st Cir. 2006). Only questions two and three are implicated in this case. Here, the parties dispute why Appellees' convictions were vacated in Dellosantos, and whether that decision was, in fact, on the merits. The government argues that our opinion in Dellosantos vacated Appellees' convictions due to a material variance -- a procedural

-9-

ground not subject to double jeopardy.  See Hall, 481 U.S. at 402-03; Marshall, 735 F.3d at 18.  Appellees, meanwhile, argue that we vacated their convictions due to insufficient evidence -- a substantive ruling "relate[d] to the ultimate question of guilt or innocence" and protected from retrial under the Double Jeopardy Clause.  See Evans v. Michigan, 133 S. Ct. 1069, 1075 (2013) (quoting Scott, 437 U.S. at 98 n.11) (internal quotation marks omitted); United States v. Martin Linen Supply Co., 430 U.S. 564, 571 (1977); Marshall, 753 F.3d at 18.  A careful reading of Dellosantos reveals that we did both.

In Dellosantos, we initially explained that while "the indictment charged the Defendants with participation in a single Maine-based conspiracy to distribute and possess with intent to distribute both cocaine and marijuana," 649 F.3d at 121, there was "insufficient evidence to support the finding of a single conspiracy," id. at 119.  Rather, the evidence "established the existence of at least two distinct conspiracies: (1) the Massachusetts-based Vizcaíno-Dellosantos-Szpyt conspiracy to distribute cocaine, and (2) the Maine-based Sanborn-centered conspiracy to distribute both cocaine and marijuana." Id. at 121. As such, because the charged conspiracy never existed, it was necessary to analyze each of these distinct conspiracies to evaluate whether there was sufficient evidence to support a conviction, and, if so, whether the variance between the charged

-10-

conspiracy and the conspiracy proven was prejudicial.  Id. at 122,
124.  The analysis for each conspiracy resulted in an independent
holding -- each with its own consequence and implication for future
proceedings.

Regarding the second conspiracy -- the Maine-based
Sanborn-centered conspiracy to distribute both cocaine and
marijuana -- we held that "the evidence was insufficient to support
a verdict that either Szpyt or Dellosantos knowingly and
voluntarily joined."  Id. at 121.  This was clearly a substantive
ruling that went to the ultimate question of guilt or innocence.
As a result, any attempt to re-indict Appellees on that conspiracy
would be barred by the Double Jeopardy Clause.  See, e.g.,
Marshall, 753 F.3d at 18 ("It is black letter law that 'the Double
Jeopardy Clause precludes a second trial once the reviewing court
has found the evidence legally insufficient.'" (quoting Burks, 437
U.S. at 18)); United States v. Meléndez-Rivas, 566 F.3d 41, 43 (1st
Cir. 2009) (explaining that if "the evidence was insufficient
. . . then the case ends and [defendant] may not be tried again").

But our analysis in Dellosantos did not end there.
Instead, we then "turn[ed] to whether the Defendants' convictions
can nonetheless stand based on a finding that the Defendants joined
the other conspiracy proven by the government, i.e., the Vizcaíno-
Dellosantos-Szpyt conspiracy to distribute cocaine."  Dellosantos,
649 F.3d at 124.  In analyzing this conspiracy, we held that

"although the evidence was arguably sufficient to support a finding that the Defendants joined the second conspiracy proven (i.e., the Vizcaíno-Dellosantos-Szpyt conspiracy), . . . the variance between the conspiracy specified in the indictment and the Vizcaíno-Dellosantos-Szpyt conspiracy unfairly prejudiced the Defendants." Id. at 125-26.  We explained that

> under the guise of its single conspiracy theory, the government subjected the Defendants to voluminous testimony relating to unconnected crimes in which they took no part. This situation created a pervasive risk of "evidentiary spillover," where the jury might have unfairly transferred to the Defendants the guilt relating to the other sixteen indicted individuals.

Id. at 125.

Unlike our substantive holding regarding the Sanborn-centered cocaine-and-marijuana conspiracy, our holding regarding this Vizcaíno-Dellosantos-Szpyt cocaine-only conspiracy was procedural -- there was a problem with the initial indictment -- and had nothing to do with either the sufficiency of the evidence or Appellees' guilt or innocence.[4]  Accordingly, the Double

_____

[4]  Indeed, unlike the Sanborn-centered conspiracy to distribute both cocaine and marijuana, the entire panel believed there was, at least arguably, sufficient evidence to sustain the convictions on this independent Vizcaíno-Dellosantos-Szpyt cocaine-only conspiracy. E.g., Dellosantos, 649 F.3d at 124 ("[T]he jury, under a proper set of instructions, could arguably have convicted the Defendants of participating in the Vizcaíno-Dellosantos-Szpyt conspiracy . . . ."); id. at 125 ("[T]he evidence was arguably sufficient to support a finding that the Defendants joined the second conspiracy proven (i.e., the Vizcaíno-Dellosantos-Szpyt conspiracy) . . . ."); id. at 126 (Howard, J., concurring in part

Jeopardy Clause "poses no bar to further prosecution" on it. <u>Hall</u>, 481 U.S. at 402 (quoting <u>Scott</u>, 437 U.S. at 90-91) (internal quotation marks omitted); <u>see</u> <u>Marshall</u>, 753 F.3d at 18 ("[W]here reversal is based upon a variance between the crime charged in the indictment and the crime proved at trial, the Double Jeopardy Clause is no bar to retrial."); <u>see also</u> <u>United States</u> v. <u>Akpi</u>, 26 F.3d 24, 26 (4th Cir. 1994) (finding no double jeopardy violation where Appellant "took his first appeal to correct an error based on a defective indictment" because the "defect in no way related to the sufficiency of the evidence but only to the manner in which he was charged" and the reversal "was on a most technical ground, particularly when it is remembered that the government presented ample evidence at trial"); <u>Hunter</u> v. <u>New Mexico</u>, 916 F.2d 595, 599-600 (10th Cir. 1990) ("[T]he jury was allowed to convict [Appellant] on a different set of facts than those set forth in the information. . . . Consequently, we hold the modified jury instruction constituted a constructive amendment of the information which requires reversal. . . . [T]he case [is] remanded for a new trial on that charge."). It is this Vizcaíno-Dellosantos-Szpyt cocaine-only conspiracy that is charged in the Current Indictment.

The district court's entry of an order of acquittal on the First Indictment does not alter this conclusion. An acquittal

and dissenting in part) (finding that "[e]ven under [the majority's] framework, there was sufficient evidence to convict Szpyt" and possibly Dellosantos).

-13-

"is not to be controlled by the form of the judge's actions," but rather by "whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." Martin Linen Supply Co., 430 U.S. at 571; see also United States v. Hosp. Monteflores, Inc., 575 F.2d 332, 333 n.1 (1st Cir. 1978). The Supreme Court recently reaffirmed this principle, explaining that a "decision turns not on the form of the trial court's action, but rather whether it 'serve[s]' substantive 'purposes' or procedural ones." Evans, 133 S. Ct. at 1078 (alteration in original) (quoting Scott, 437 U.S. at 98 n.11). As an example, it observed that "[i]f a trial court were to announce, mid-trial, 'The defendant shall be acquitted because he was prejudiced by preindictment delay,' the Double Jeopardy clause would pose no barrier to reprosecution, notwithstanding the 'acquittal' label." Id. (emphasis added).

Though arising in a slightly different context, the same principle applies here. Dellosantos held that: (1) there was no Maine-Massachusetts overarching conspiracy to distribute both cocaine and marijuana; (2) there was insufficient evidence to convict on the Sanborn-centered marijuana and cocaine conspiracy; and (3) though there was arguably enough evidence, it would constitute a material variance to allow a conviction to stand on the distinct Vizcaíno-Dellosantos-Szpyt cocaine-only conspiracy. Regarding this distinct Vizcaíno-Dellosantos-Szpyt cocaine-only

-14-

conspiracy, therefore, Defendants prevailed on a procedural issue; the merits of this separate crime were never decided, and the district court's use of the word "acquittal" does not change that fact.  It is clear to us that the entry of "acquittal" was intended to be no different than had the government on remand moved to dismiss without prejudice or to amend the indictment -- both of which would not have been barred by the Double Jeopardy clause.[5] As such, the Current Indictment does not constitute a re-prosecution on the same crime and there is no double jeopardy violation.

Still, despite the analyses and holdings in Dellosantos, Appellees argue that the government is seeking to prove the "same offense" in this subsequent proceeding.  They argue that an application of the "more nuanced form of the same evidence test" as explained in United States v. Laguna-Estela, 394 F.3d 54, 57 (1st Cir. 2005), and United States v. Hart, 933 F.3d 80, 85-86 (1st Cir. 1991), is required.[6]  That test, they say, necessitates a finding

---

[5]   This, of course, only applies to the distinct Vizcaíno-Dellosantos-Szpyt cocaine-only conspiracy.  Because we found in Dellosantos that there was insufficient evidence to convict Appellees on the Sanborn-centered cocaine-and-marijuana conspiracy, the district court's entry of acquittal as applied to that conspiracy was just that: an acquittal based on the merits.  Thus, had the government attempted to re-indict Appellees on the Sanborn-centered conspiracy to distribute both cocaine and marijuana, the entry of acquittal and the Double Jeopardy Clause would have barred any further prosecution.

[6]   In those cases, we "identified five factors that must be considered" in determining whether "two charged conspiracies that

-15-

that the Current Indictment is just a subset of the overarching conspiracy charged in the First Indictment, and that both indictments charge Appellees for their participation in one single conspiracy. However, Appellees seemingly overlook the fact that Dellosantos explicitly rejected the argument that there existed only one overarching conspiracy. On at least six different occasions, we emphasized that this overarching conspiracy did not exist, but rather that the "evidence established at least two conspiracies" which were "distinct" and separate from each other. See, e.g., Dellosantos, 649 F.3d at 117, 119, 121, 122, 124, 125. We explained that: "the two conspiracies had materially different goals," id. at 119; that "the two conspiracies lacked sufficient interdependence," id.; that "nothing was presented to the jury to suggest that either [Appellee] believed that the success of their cocaine distribution operation likely depended on Sanborn's marijuana distribution venture," id.; that "the ventures [did not] share the objective of serving a particular organization or boss," id.; that no "individual or group had an 'iron-fisted control' over the two distribution schemes" but rather each scheme used different

_____

allege violations of the same substantive statute are the same offense for the purpose of double jeopardy." Laguna-Estela, 394 F.3d at 57. These include: (1) the time during which the activities occurred; (2) the persons involved; (3) the places involved; (4) whether the same evidence was used to prove the two conspiracies; and (5) whether the same statutory provision was involved in both conspiracies. Id.; see also Hart, 933 F.2d at 85-86.

-16-

suppliers, id.; and that "Sanborn was not the type of 'hub' character that frequently exists in cases where this court has found significant overlap and an overarching conspiracy," id. at 121.

In sum, we concluded that the "Vizcaíno-Dellosantos-Szpyt criminal conspiracy to distribute cocaine was a different criminal enterprise than the [Sanborn-centered] marijuana enterprise, with different products, a different source of supply, different goals, and a different history." Id.; see also United States v. Calderone, 982 F.2d 42, 47 (2d Cir. 1992) ("[W]e have held conspiracies to be different where the facts of a smaller conspiracy . . . such as time and geography, were wholly contained within a larger conspiracy so long as there were sufficient factors that shared only a slight overlap of facts or none at all."); United States v. Thomas, 759 F.2d 659, 662 (8th Cir. 1985) ("The essence of the determination is whether there is one agreement to commit two crimes, or more than one agreement, each with a separate object."). There is little question that the government is free to bring separate charges on a different, though similar, conspiracy. See, e.g., United States v. Félix, 503 U.S. 378, 386, 387 (1992) (explaining that "a mere overlap in proof between two prosecutions does not establish a double jeopardy violation" and that "the introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct");

United States v. Morris, 99 F.3d 476, 480 (1st Cir. 1996) (rejecting double jeopardy claim despite the two conspiracies taking place contemporaneously, involving essentially the same personnel, occurring at much the same places, and involving most of the same evidence because the conspiracies involved different primary goals and thus separate statutory provisions); Hart, 933 F.2d at 85 ("The fact that both counts against [plaintiff] implicate the same statutory violations does not in itself create a double jeopardy bar. . . . [Plaintiff] could have been tried separately for the two similar but separate conspiracies."); Kerrigan v. United States, 644 F.2d 47, 49 (1st Cir. 1981) ("[I]ndictments charging two or more agreements, even agreements to commit similar or related crimes, charge more than one conspiracy." (citing Braverman v. United States, 317 U.S. 49, 52 (1949))); see also United States v. Ziskin, 360 F.3d 934, 943-48 (9th Cir. 2003) (finding no double jeopardy violation because defendant was indicted on two separate yet similar conspiracies and not one overarching conspiracy). This is especially true when the convictions were reversed due to a material variance and not due to the insufficiency of the evidence.[7]

---

[7] This is a far cry from the district court's pronouncement that the "Government now essentially seeks to rip the 'Vizcaíno-Dellosantos-Szpyt conspiracy' chapters from its Szpyt I novel and present those very pages to a new jury in hopes that it can secure a conviction of the Defendants on this smaller conspiracy." Though the district court apparently viewed the evidence differently, Dellosantos found not one overarching conspiracy but rather two

We recognize that the resolution of this case is driven almost exclusively by our decision in Dellosantos. Indeed, had the jury in that case returned a not-guilty verdict, our analysis today would be limited solely to the indictments in each case and the typical five-factor investigation called for by Laguna-Estela. Under that scenario, the result would undoubtedly be different. But, because we must give full force to our prior decision,[8] we

---

simultaneous yet distinct conspiracies. It is impossible to conclude -- as both the district court and the dissent attempt to do -- that the Vizcaíno-Dellosantos-Szpyt conspiracy is just a smaller part of a larger overarching conspiracy when that supposed overarching conspiracy was found to never have existed in the first place. Regardless of whether or not the district court's application of Laguna-Estela and Hall would have withstood scrutiny and been affirmed in the first instance, the findings in Dellosantos mandate the opposite result and are binding under res judicata. See Sealfon v. United States, 332 U.S. 575, 578 (1948) (explaining that res judicata "applies to criminal as well as civil proceedings"); Global NAPs, Inc. v. Verizon New Eng., 603 F.3d 71, 95 (1st Cir. 2010) ("Issue preclusion requires that (1) both proceedings involved the same issue of law or fact, (2) the parties actually litigated that issue, (3) the prior court decided that issue in a final judgment, and (4) resolution of that issue was essential to judgment on the merits."); Negrón-Fuentes v. UPS Supply Chain Solutions, 532 F.3d 1, 7 (1st Cir. 2008) ("In general terms . . . , issue preclusion renders conclusive the determinations reached in previous law suits between the same (and, sometimes, different) parties."). Our dissenting colleague's suggestion that these findings were not essential to the judgment on the merits in Dellosantos just further highlights its misreading of Dellosantos. Dellosantos's findings of two simultaneous yet distinct conspiracies, and not one overarching conspiracy, were the entire foundation for our holding that there was a material and prejudicial variance mandating reversal.

[8] Though the dissent suggests that we are attempting to revisit Dellosantos, it is actually the dissent that is doing so. Despite Dellosantos's holding to the contrary, the dissent insists on characterizing the Current Indictment as a "narrower" charge and a "portion" of the First indictment. At the same time, it disregards

have no other choice but to conclude that double jeopardy does not bar this indictment.

## B. Dellosantos's Additional Arguments

Recognizing that we may affirm the district court "on any basis made apparent by the record," McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir. 2006), Dellosantos raises two additional arguments to support the dismissal of the Current Indictment. We address each issue briefly, finding neither to have merit.

### 1. Judicial Estoppel

Dellosantos first contends that the government is judicially estopped from arguing that there are two distinct conspiracies because this position is inconsistent with its initial position that there existed one overarching conspiracy. See InterGen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003) ("As a general matter, the doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding."). Though the contours of judicial estoppel are "hazy, and there is no mechanical test for determining its applicability," Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004), three factors have guided us in the past:

---

Dellosantos's entire variance analysis.

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position . . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

United States v. Pakala, 568 F.3d 47, 59 (1st Cir. 2009) (quoting Zedner v. United States, 547 U.S. 489, 504 (2006)).

Dellosantos is certainly correct that the government has taken mutually exclusive positions in these successive prosecutions, thus satisfying the first factor. The other factors, however, are not met. Contrary to Dellosantos's claim, the government was not successful in the initial prosecution. Its initial position of one overarching conspiracy -- which did admittedly succeed at trial -- was ultimately rejected on appeal in Dellosantos. Once the jury's verdict was vacated, any success the government may have had with its one-overarching-conspiracy position disappeared.

We also reject the contention that the government is deriving an unfair advantage from this change in position. As the Supreme Court acknowledged in Burks, when a conviction is reversed following a finding of procedural error, not only does "the accused [have] a strong interest in obtaining a fair readjudication of his guilt free from error," but society also "maintains a valid concern for insuring that the guilty are punished." 437 U.S. at 15. Both

the jury and our prior decision found sufficient evidence to convict Appellees. There is nothing unfair about allowing the government to retry them following a reversal for a material variance, which is nothing more than a procedural error. Because two of the three considerations for a finding of judicial estoppel are lacking, Dellosantos's argument fails.[9]

### 2. Improper Venue

Dellosantos next argues that because he did not have a relationship with any of the Maine co-conspirators, never lived or worked in Maine, is accused of buying and selling cocaine only in Massachusetts, and entered Maine only for court-related matters, venue in Maine is improper and thus his constitutional rights are being violated. See United States v. Lanou, 137 F.3d 656, 661 (1st Cir. 1998) ("A defendant in a criminal case has a constitutional right to be tried in a proper venue."); see also U.S. Const. art. III, § 2, cl. 3 ("The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed

---

[9] We also note that Dellosantos's argument cuts both ways. Like the government, Dellosantos is taking an opposite position here. In the prior prosecution and before us in Dellosantos, Dellosantos argued that the evidence was insufficient because there were multiple conspiracies; now he argues that the two conspiracies were really just part of one overarching conspiracy. If anything, the case for judicial estoppel would be stronger against Dellosantos because his initial position of two distinct conspiracies did succeed in the earlier proceedings and because he is now attempting to escape punishment for his crime despite a jury finding him guilty beyond a reasonable doubt and this court finding sufficient evidence in the record to support that verdict.

. . . ."); <u>id.</u> amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ."). Venue in Maine, however, is appropriate.

In the context of a conspiracy, "venue is proper in any district in which an act in furtherance of the charged conspiracy has taken place." <u>United States</u> v. <u>Santiago</u>, 83 F.3d 20, 25 (1st Cir. 1996). This is true "even if a particular coconspirator was not himself physically present in that district." <u>Id.</u> While Dellosantos may not have had any ties to Maine, his co-conspirator Szpyt did have such ties. As we explained in <u>Dellosantos</u>, the evidence showed that Szpyt owned the Iron Horsemen clubhouse in Maine and sold cocaine to numerous Iron Horsemen members there, one of those customers being Sanborn. <u>Dellosantos</u>, 649 F.3d at 111-12. Given these facts, the government has met its burden of establishing by a preponderance of the evidence that venue in Maine is proper. <u>See</u> <u>Lanou</u>, 137 F.3d at 661.

### III. <u>Conclusion</u>

In <u>Dellosantos</u>, we rejected the argument that there existed a single, overarching conspiracy to distribute both cocaine and marijuana. Instead, we held that there were two independent and distinct conspiracies, each running simultaneously with one another and with very little overlap. While we found insufficient

evidence to support Appellees' convictions on one conspiracy -- the Sanborn-centered conspiracy to distribute both cocaine and marijuana -- we found that there arguably was sufficient evidence to convict Appellees on the other conspiracy -- the uncharged Vizcaíno-Dellosantos-Szpyt conspiracy to distribute only cocaine. Nevertheless, we vacated the convictions due to a procedural issue: a material variance between this second conspiracy and the single overarching conspiracy charged in the indictment. Given our holdings in Dellosantos, the government's decision to bring the Current Indictment charging Appellees with this second conspiracy is not barred by the Double Jeopardy Clause. Dellosantos's efforts to save the dismissal on the alternate grounds of estoppel and venue also fail. Accordingly, the district court's order dismissing the indictment is **REVERSED.**

**"Concurring Opinion follows"**

-24-

**HOWARD, Circuit Judge, concurring.** The majority opinion correctly solves this double jeopardy puzzle, and I join it except with respect to one analytical step.

The lead opinion suggests that issue preclusion requires us to adopt the findings of Dellosantos. Slip Op. at 18-19 n.7. I, however, believe that the law of the case doctrine actually governs. See United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004) (explaining that a legal decision in one case ties "a successor appellate panel in a second appeal in the same case"). If the acquittal following Dellosantos "was intended to be no different than had the government on remand moved . . . to amend the indictment," Slip. Op. at 15, I do not see how this appeal differs from any other that follows a remand and subsequent proceeding for law of the case purposes. See, e.g., United States v. Wallace, 573 F.3d 82, 89 (1st Cir. 2009). Indeed, by implying that this is a new, discrete matter, the lead opinion might give fodder to the dissent's point that our analysis should be limited solely to the indictments.

Either way, I agree that our decision must now be tethered to the holdings of Dellosantos.[10] Though the dissent's

---

[10] I continue to believe that Dellosantos was wrongly decided. See United States v. Dellosantos, 649 F.3d 109, 126 (Howard, J., concurring in part and dissenting in part). In addition to expressing that belief at the time of the decision, I also dissented from the panel's refusal to rehear the case. Order on Appellee's Petition for Rehearing, United States v. Dellosantos, Nos. 09-2135, 09-2670 (1st Cir. Nov. 1, 2011). Our dissenting

-25-

analysis would unquestionably be correct in a normal double jeopardy case, it does not adequately account for that prior decision.[11]  Simply stated, Dellosantos reversed the appellants' convictions on prejudicial variance grounds -- a purely procedural decision that does not bar re-prosecution on the discrete crime that the government currently charges.  See, e.g., Marshall v. Bristol Superior Court, 753 F.3d 10, 18 (1st Cir. 2014).  Only by turning a blind eye to the nearly twenty times that Dellosantos differentiated the conspiracies, and by pretending that the charged crimes present themselves here on a blank slate, could we view the Massachusetts-based conspiracy as a "lesser included" version of an offense the defendants were acquitted of.

Such a perspective is certainly not mandated here, and it would permit the defendants to escape the natural consequences of their prior, successful appeal by introducing a new, irreconcilable

---

colleague here nicely captures the reasons why.  Dissent at 35-36 n.16 (describing how the prior Dellosantos decision was potentially incompatible with Griffin v. United States, 502 U.S. 46 (1991), and questionable under a "mere variance analysis").  Having lost that battle though, I cannot now "revisit[] how to decide Dellosantos." Dissent at 36.

[11]  The dissent takes the position that the prior Dellosantos decision was one that spoke to the substantive guilt of the defendants.  As the lead opinion emphasizes, the dissent can only reach that conclusion by ignoring the entire variance analysis at the heart of Dellosantos.  It is that misstep that permits the dissent to classify the charged conspiracy as "an offense entirely subsumed in the prior acquitted offense," dissent at 37, and to thus present its rhetorically powerful though ultimately fictive parade of horribles.

argument.  See New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (A litigant should not be permitted to "prevail[] in one phase of a case on an argument and then rely[] on a contradictory argument to prevail in another phase") (citation and internal quotation marks omitted); see also United States v. Pakala, 568 F.3d 47, 59 (1st Cir. 2009) (asking whether a party's later position is clearly inconsistent with an earlier one; whether the party succeeded in the first proceeding based on the prior argument; and whether that party "would derive an unfair advantage" if permitted to "assert an inconsistent position").

In the first appeal, Dellosantos insisted that "[t]he evidence showed there were two conspiracies; one involving cocaine and the other involving marijuana.  These two conspiracies were distinct, involved different sources and flow of distribution." He added, "[i]f the defendant was a member of another conspiracy, and not the one charged, then the defendant is not guilty of the conspiracy as charged."  Szpyt likewise asserted that "[t]he evidence in this case established two conspiracies, not the one charged in the indictment."[12]

In the appeal now, however, the defendants take an entirely inconsistent position.  They argue that "the government is

---

[12]  The dissent again sees only what it wants.  It states that in Dellosantos the defendants merely "argued, first, that the government failed to prove [the conspiracy charged]." Dissent at 32.  But, the defendants' precise argument, as highlighted above, shows otherwise.

-27-

attempting an 'end run' by re-prosecuting Dellosantos and Szpyt for the same conspiracy, minus the marijuana part." In other words, they claim that this cocaine-only conspiracy is merely part of the one, overarching conspiracy charged before.

They cannot have it both ways. Either there was a conspiracy that included at least the cocaine-only conspiracy, or there were entirely distinct conspiracies. After succeeding in convincing a majority of the prior panel that the latter was true, it would be inequitable to permit the defendants to escape prosecution by now arguing the former. As the lead opinion notes, the defendants have changed their tune solely to "escape punishment for [a] crime despite a jury finding [them] guilty beyond a reasonable doubt and this court finding sufficient evidence in the record to support that verdict." Slip. Op. at 22 n.9. Allowing such a gambit threatens "the integrity of the judicial process." Perry v. Blum, 629 F.3d 1, 8 (1st Cir. 2010).

Accordingly, because our inquiry must be anchored to Dellosantos, and since the defendants cannot now proffer an inconsistent position to dodge the foreseeable result of their earlier contention, I concur.


**"Dissenting Opinion follows"**

**KAYATTA, Circuit Judge, dissenting.** In _Dellosantos_ the government charged defendants with participating in a single conspiracy (the so-called "overarching conspiracy" covering two states and two illicit drugs). The court in that case unequivocally stated: "we conclude that there was insufficient evidence to support the finding of a single conspiracy." 649 F.3d at 119. My colleagues must therefore agree (they would say so if they did not), that the Fifth Amendment bars the government from re-indicting defendants for that single, overarching conspiracy charged but not proven in _Dellosantos_. Indeed, it would appear that even the government agrees with that unremarkable proposition. The government instead re-indicted defendants on a narrower, cocaine-only portion of the previously charged single, overarching conspiracy. So we have a classic double jeopardy question: Is the new charge the "same offense" as the offense for which defendants were previously indicted and acquitted?

When the offenses to be compared are each conspiracy offenses, the comparison can sometimes be tricky. _See_ _United States_ v. _Laguna-Estela_, 394 F.3d 54, 57 (1st Cir. 2005) (employing a "nuanced," five-factor test). Here, though, the government concedes that there is no element of the second charged offense that was not an element of the first charged offense. Indeed, there will not even be any new evidence. Under basic double jeopardy rules, it therefore follows that the two offenses are the

-29-

same.  See Brown v. Ohio, 432 U.S. 161, 168 (1977) ("[T]wo offenses are the same unless each requires proof that the other does not.").

The majority misses this straightforward answer by failing to compare the offense charged in the new indictment (the Massachusetts-based, cocaine-only conspiracy) with the offense for which defendants were previously acquitted (the single overarching conspiracy).  Instead, the majority devotes most of its effort to comparing the offense charged in the new indictment with only the unproven portion of the overarching conspiracy charged in Dellosantos.  Noting that Dellosantos found that the Massachusetts-based, cocaine-only conspiracy and the Maine-based, cocaine and marijuana conspiracy were "distinct," 649 F.3d at 119, the majority interprets that finding to mean that, for double jeopardy purposes, the newly charged offense is different than the offense for which defendants were acquitted.

That is simply the wrong comparison.  As the majority avoids acknowledging, but cannot claim to dispute, Dellosantos plainly held that the evidence was insufficient to prove the single, overarching conspiracy that was charged.  Id.  So, that is the offense for which re-prosecution is barred.  And that is therefore necessarily the offense to which this new indictment must be compared to see if it alleges a different offense (i.e., one with a new element).

To support a contrary and entirely unprecedented approach, my colleagues declare that the single conspiracy charged in Dellosantos "did not exist." Slip Op. at 16. And to make that declaration binding on defendants, their two opinions audition a trio of preclusion doctrines for roles these doctrines have never played before in any cited precedent. For example, to script a role for the law of the case doctrine, the concurrence must pretend that this case is actually the same case as Dellosantos. See, e.g., United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004) (The law of the case doctrine governs "the same issues in subsequent stages in the same case") (emphasis added). As the docket numbers and common sense evidence, it clearly is not.[13] More importantly, in applying each of the estoppel doctrines mentioned in their opinions, my colleagues make three fundamental mistakes.

First, their description of the holding in Dellosantos that they say now binds these defendants in this subsequent case materially errs in its lack of precision. The precise question at issue in Dellosantos was whether the government had proven beyond a reasonable doubt that there was an overarching, two-state conspiracy to distribute both cocaine and marijuana. The holding in Dellosantos that the evidence was insufficient to prove such a

---

[13] Were it the same case, then I would presume no additional appointments of counsel under the Criminal Justice Act would have been required, Speedy Trial Act deadlines would be calculated accordingly, limitations periods would not have continued running after the acquittal, and so on.

single conspiracy required acquittal on the charge.  Whether there was in fact no such single conspiracy is something that the court could not have known and the defendants need not have proved (and actually did not argue).  For that simple reason there is no basis at all for applying issue preclusion to establish that the single overarching conspiracy never existed. See, e.g., Global NAPS, Inc., v. Verizon New Eng., 603 F.3d 71, 95 (1st Cir. 2010) (Issue preclusion requires that resolution of the issue was essential to judgment on the merits in the first case).

Second, defendants are not engaged in any inconsistent advocacy regarding the existence of the overarching conspiracy. They argued, first, that the government failed to prove such a conspiracy; they argue, now, that the government is still trying to convict them of a lesser included version of that exact same conspiracy.  The lack of any inconsistency between these two positions renders judicial estoppel inapplicable. See, e.g., Perry v. Blum, 629 F.3d 1, 8-9 (1st Cir. 2010) (Judicial estoppel requires, among other things, that the party's earlier and later positions are "clearly inconsistent.").

Third, and most tellingly, even if one were to accept the proposition that these defendants are now bound to accept as a fact the non-existence of the single overarching conspiracy for which they were acquitted in Dellosantos, so what?  Such a proposition leaves untouched the pertinent double jeopardy inquiries:  Can the

-32-

prosecution re-indict on that offense?  Clearly it cannot.  And does this newly charged offense have any element that was not included in that prior acquitted offense?   As the government concedes, it does not.   Under <u>Brown</u> v. <u>Ohio</u>, double jeopardy therefore bars this second prosecution.  432 U.S. at 168.

This conclusion is hardly surprising.  By definition, most acquittals occur precisely because the government fails to prove a part of its case.  If that failure therefore were to mean that we no longer compare the newly charged offense to the prior acquitted offense because the greater crime charged "did not exist," then Fifth Amendment protections would shrink markedly.  Surely the majority does not mean to suggest that anytime the government overcharges and a court finds that it fails to prove the aggravating element, the government may re-indict on a lesser included offense merely by pointing out that it failed to prove a portion of the previously acquitted, greater offense?  <u>Brown</u> v. <u>Ohio</u> plainly prohibits such a gambit.  <u>Id.</u>  Yet that is exactly what the majority says the government can do here.[14]

_____

[14]    Implicitly recognizing that double jeopardy would bar the prosecution here if <u>Dellosantos</u> resulted in an acquittal for insufficient evidence, the concurrence argues that <u>Dellosantos</u> vacated defendants' convictions on purely procedural grounds, like a defect in the charging instrument, and thus double jeopardy does not bar this prosecution. <u>See</u> <u>Montana</u> v. <u>Hall</u>, 481 U.S. 400, 404 (1987).  But <u>Dellosantos</u> plainly stated: "the government failed to prove beyond a reasonable doubt . . . the conspiracy that was <u>charged</u>." 649 F.3d at 126 n. 18 (emphasis in original).  There was no defect in the charging instrument except to the extent that the government charged an offense that it could not prove.

Nor does it matter that the government may have proved part of its case the first time around.  That happens in most prosecutions that end in acquittal.  See, e.g., United States v. Glenn, 828 F.2d 855, 858-60 (1st Cir. 1987).  Nevertheless, as long as the disposition "represents a resolution, correct or not, of some . . . of the factual elements of the offense charged," the double jeopardy clause bars re-prosecution for that same offense.  United States v. Martin Linen Supply Co., 430 U.S. 564, 571 (1977).  And, as I must stress, that "same offense" includes any offense that does not contain a new element.  Brown, 432 U.S. at 168.

The majority cannot pass its holding off as a one-time only, idiosyncratic mulligan for the prosecution.  Prosecutors not infrequently stretch ambitiously in charging the scope of conspiracies so as to rope in more drugs, more guns, and thus higher minimum and maximum sentences.  See, e.g., Glenn, 828 F.2d at 858-60.  And jurors not infrequently buy such claims, leading to judicial reversals for insufficient evidence.  In Glenn, for example, we reversed a conviction for conspiracy to distribute both hashish and marijuana because the evidence showed only that the defendant was involved in a conspiracy to distribute hashish. Id.; see also United States v. Franco-Santiago, 681 F.3d 1, 4 (1st Cir. 2012) (insufficient evidence to show that defendant conspired to rob multiple banks, though sufficient evidence to show he conspired to rob one bank); United States v. Valerio, 48 F.3d 58, 63-65 (1st

Cir. 1995) (insufficient evidence to show that defendant conspired to possess cocaine with intent to distribute, though arguably sufficient evidence that she conspired to possess cocaine); United States v. Hernandez, 625 F.2d 2, 3-4 (1st Cir. 1980) (insufficient evidence to show that defendant conspired to distribute eight pounds of cocaine, though arguably sufficient evidence that he conspired to sell one ounce). After today, in this circuit (but fortunately in no others yet), the government need not worry itself too much over losses of that type; rather, it can recharge on the smaller, subsumed conspiracy, using even (as here) only evidence from the first unsuccessful prosecution.[15]

With some reason, my colleagues may wonder in hindsight whether Dellosantos was correctly decided.[16] But the Fifth

---

[15] The concurrence, like the majority, offers no counter to the argument that its approach allows re-prosecution for uncharged lesser included offenses in a broad array of cases of which the foregoing is simply a sample.

[16] Under Griffin v. United States, 502 U.S. 46 (1991), the indictment might arguably have been read as charging a dual object conspiracy that could arguably be proven merely by supporting a conviction on one of the two objects. 649 F.3d at 126-27 (Howard, J., concurring in part and dissenting in part). Or one might arguably have read the indictment as simply a charge of conspiracy to distribute and possess controlled substances, with the dual product allegations serving as details that would lead only to a mere variance analysis. See, e.g., Martin v. Kassulke, 970 F.2d 1539, 1545-46 (6th Cir. 1992); cf. Marshall v. Bristol Superior Court, 753 F.3d 10, 18 (1st Cir. 2014).

Apparently, though, the prosecution did not press these arguments. 649 F.3d at 126 n.18 ("[T]he government argues in a cursory manner . . . .") and 127 ("But the government has to make the argument to benefit from it.") (Howard, J., concurring in part

-35-

Amendment prevents us from revisiting how to decide Dellosantos. Martin Linen Supply Co., 430 U.S. at 571 ("A verdict of acquittal could not be reviewed on error or otherwise without putting (a defendant) twice in jeopardy.") (internal citations and quotation marks omitted). The only relevant finding from Dellosantos now is that it issued a "substantive ruling that went to the ultimate question of guilt or innocence," Slip Op. at 11, indicating acquittal for insufficient evidence on the charged offense. Dellosantos, 649 F.3d at 126.

The government could have avoided all of this by pleading alternative counts in Dellosantos. See United States v. Calderone, 982 F.2d 42, 48 (2d Cir. 1992). Prosecutors are well aware of the double-edged sword presented by tiered, lesser included offenses. Indicting a defendant in the alternative on both greater and lesser included versions of a crime likely increases the chances of a guilty verdict but also decreases the chances of a guilty verdict on the greater offense. Here, the government was overly ambitious, charging defendants with only the most extended characterization of the conspiracy that involved the greatest drug quantity. It then failed to prove that charged

---

and dissenting in part). In any event, even if the result in Dellosantos was wrong, we cannot fix it now without erring further. See Evans v. Michigan, 133 S. Ct. 1069, 1081 (2013) ("[T]here is no way for antecedent legal errors to be reviewable in the context of judicial acquittals unless those errors are also reviewable when they give rise to jury acquittals . . . .").

conspiracy.  Allowing the government to take a second shot, trying defendants for an offense entirely subsumed in the prior acquitted offense, materially shifts the balance in favor of the government in a way that our founders sought to avoid.  And because prosecutors frequently charge conspiracy counts and stack drug quantity offenses, others who may actually be innocent of any crime may pay a dear price.

I therefore respectfully dissent from the majority's decision to permit a post-acquittal prosecution for a lesser included version of the prior charged offense.